## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## SHERMAN DIVISION

| | | |
|---|---|---|
| **CAROLYN SUE ALLEN,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil No. 4:20-cv-290-SDJ-KPJ** |
| | § | |
| **SHERMAN OPERATING COMPANY,** | § | |
| **LLC d/b/a TEXOMA HEALTHCARE,** | § | |
| | § | |
| **Defendant.** | § | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Pending before the Court is Plaintiff Carolyn Sue Allen's ("Mrs. Allen") Motion for Leave (the "Motion") (Dkt. 16). In the Motion, Mrs. Allen requests leave to file a First Amended Complaint, which would add her husband, Christopher James Allen ("Mr. Allen"), as a co-Plaintiff and assert an additional cause of action. *See id.* Defendant Sherman Operating Company, LLC d/b/a Texoma Healthcare ("Sherman Operating") filed a response (Dkt. 18), to which Mr. and Mrs. Allen (collectively, "the Allens") filed a reply (Dkt. 21).

The Court held a hearing (the "Hearing"), heard oral argument, and ordered additional briefing. *See* Dkts. 24, 32. Both parties timely filed supplemental briefs. *See* Dkts. 33, 34.

Having considered the applicable authorities, pleadings, and oral arguments, the Court finds the Motion (Dkt. 16) is hereby **GRANTED**.

**IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment (Dkt. 23) is **DENIED AS MOOT**.

# I.   **BACKGROUND**

In 2018, Mrs. Allen was an employee of Sherman Operating, a Texas limited liability company. *See* Dkt. 1 at 2; Dkt. 3 at 1. Sherman Operating maintained a telephone at its business location in Sherman, Texas, which Mrs. Allen alleges had a "long, straight" wire that "would frequently end up in the path of employees as they walked." Dkt. 1 at 2; Dkt. 3 at 2.

Mrs. Allen alleges that, on July 13, 2018, while she was walking through the office, the telephone cord caught and wrapped around her ankle, causing her to trip and fall. *See* Dkt. 1 at 2. Mrs. Allen alleges she hit her head against a wall, fell on her stomach, broke her teeth, and suffered a catastrophic brain injury. *Id.* Mrs. Allen contends she can never work again. *Id.*

Sherman Operating is a worker's compensation non-subscriber. Dkt. 1 at 2; Dkt. 3 at 2. Instead of offering worker's compensation, the company offers its employees a defined injury benefit plan under the Employee Retirement Income Security Act ("ERISA"). *Id.* Mrs. Allen alleges Sherman Operating refused to provide her full benefits under the ERISA plan, which, according to Mrs. Allen, includes paying medical and disability benefits. *See* Dkt. 1 at 2.

On April 8, 2020, Mrs. Allen filed an Original Complaint (Dkt. 1) against Sherman Operating, alleging premises liability under Texas law and a violation of ERISA. *Id.* at 3. Sherman Operating filed an Original Answer (Dkt. 3), and the Court entered an Order Governing Proceedings (Dkt. 4) and Scheduling Order (Dkt. 10).

On August 27, 2020, Mrs. Allen filed the present Motion (Dkt. 16), wherein she seeks leave to file a First Amended Complaint. The First Amended Complaint seeks to add her husband, Mr. Allen, as a co-Plaintiff, who would assert a cause of action for "loss of household services," a claim arising under Texas law. *See* Dkt. 16; Dkt. 17 at 4.

On September 10, 2020, Sherman Operating filed its response, wherein it advances three arguments for denial of the Motion: (1) Mr. Allen's loss of household services claim is barred by a two-year statute of limitations; (2) the Texas Supreme Court's Emergency Orders Regarding the COVID-19 State of Disaster ("Emergency Orders"), which affect certain deadlines, do not apply in federal courts; and (3) under Federal Rule of Civil Procedure 15(a), the Allens exhibited undue delay in filing the present Motion for leave. *See* Dkt. 18 at 3, 5, 7.

The Allens filed a reply, arguing the following: (1) the Emergency Orders apply in federal court; (2) Rule 15(a) weighs in favor of granting leave to amend the Original Complaint; and (3) Rule 15(c)'s "relating back" doctrine should apply to Mr. Allen's loss of household services claim. *See id.* at 1, 3. The Allens do not dispute that loss of household services carries a two-year statute of limitations.

The Court heard oral argument during the Hearing. *See* Dkt. 24. At the Hearing, the Court noted the question presented—whether, under *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938), and its progeny, the Texas Supreme Court's Emergency Orders Regarding the COVID-19 State of Disaster are substantive or procedural—may be one of first impression. *See* Dkt. 24. The Court then ordered the parties to file supplemental briefing, which both parties timely filed. *See* Dkts. 32, 33, 34.

## II.   LEGAL STANDARD

### A.  THE *ERIE* DOCTRINE

Under the *Erie* doctrine, "federal courts apply substantive state law when adjudicating diversity-jurisdiction claims, but in doing so apply federal procedural law to the proceedings." *Cate v. Sears, Roebuck & Co.*, 928 F.2d 679, 687 (5th Cir. 1991) (describing the holding in *Erie*). Before deciding a law is procedural or substantive, a federal court sitting in diversity should not

apply a state law if a Federal Rule is in direct conflict with the state law and the Federal Rule does not violate the Rules Enabling Act. *See Klocke v. Watson*, 936 F.3d 240, 244 (5th Cir. 2019). If the court does not find a direct conflict, it must "wade into the 'murky' waters of *Erie* itself." *All Plaintiffs v. All Defendants*, 645 F.3d 329, 333 (5th Cir. 2011).

To determine whether the state law reflects a substantive state policy, federal courts look to the final decisions of the state's highest court. *See Shanks v. AlliedSignal, Inc.*, 169 F.3d 988, 993 (5th Cir. 1999). If there is no ruling from a final decision of the state's highest court, "it is the duty of the federal court to determine as best it can, what the highest court of the state would decide." *Lampton v. Diaz*, 661 F.3d 897, 899 (5th Cir. 2011).

Federal courts also evaluate the state law under the United States Supreme Court's *Erie* "touchstones":

- whether the state law is outcome determinative;

- whether the state law is "bound up" with the state's substantive rights and obligations;

- whether the state law affects forum shopping behavior; and

- whether applying state law will avoid inequitable administration of the laws.

*All Plaintiffs*, 645 F.3d at 335–36; *see Hanna v. Plumer*, 380 U.S. 460, 468 (1965) (forum shopping and inequitable administration); *Byrd v. Blue Ridge Rural Elec. Coop., Inc.*, 356 U.S. 525, 538–39 (1958) (bound up); *Guaranty Tr. of N.Y. v. York*, 326 U.S. 99, 109 (1945) (outcome determinative).

In *Gasperini v. Center for Humanities, Inc.*, 518 U.S. 415 (1996), the Supreme Court clarified that discouraging forum shopping and avoiding inequitable administration of the laws guides the application of the outcome-determinative test. *See id.* at 428; *see also All Plaintiffs*, 645 F.3d at 336.

Further, because a statute of limitations is substantive under *Erie*, federal courts apply state statutes of limitations and related state law governing tolling of the limitation period. *See Guaranty Trust*, 326 U.S. at 110; *Hensgens v. Deere & Co.*, 869 F.2d 879, 880 & n.3 (5th Cir. 1989) (citing *West v. Conrail*, 481 U.S. 35, 39 & n.4 (1987); *Walker v. Armco Steel Corp.*, 446 U.S. 740, 752–53 (1980)).

### B.  RULE 15(a)

Rule 15(a) provides that, at any time before a responsive pleading is served, a party may amend its pleading once without seeking leave of court or the consent of the adverse party. FED. R. CIV. P. 15(a). However, after a responsive pleading is served, "a party may amend only with the opposing party's written consent or the court's leave." *Id.* Rule 15(a) instructs the court to "freely give leave when justice so requires," "evinc[ing] a bias in favor of granting leave to amend." *Id.*; *Jones v. Robinson Prop. Grp., L.P.*, 427 F.3d 987, 994 (5th Cir. 2005) (quoting *Lyn-Lea Travel Corp. v. American Airlines, Inc.*, 283 F.3d 282, 286 (5th Cir. 2002)). "The policy of the federal rules is to permit liberal amendment to facilitate determination of claims on the merits and to prevent litigation from becoming a technical exercise in the fine points of pleading. Thus, unless there is a substantial reason to deny leave to amend, the discretion of the district court is not broad enough to permit denial." *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 598 (5th Cir. 1981)) (internal citations omitted).

### C.  RULE 15(c)

"Rule 15(c) is based on the notion that once litigation involving particular conduct or a given transaction or occurrence has been instituted, the parties are not entitled to the protection of the statute of limitations against the later assertion by amendment of defenses or claims. . . ." 6A ARTHUR R. MILLER, MARY KAY KANE & A. BENJAMIN SPENCER, FEDERAL PRACTICE &

PROCEDURE § 1496 (3d ed.) (October 2020 update). Under Rule 15(c)(1)(B), an amended complaint may "relate back" to the date of the original complaint when "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." FED. R. CIV. P. 15(c). However, as many courts have noted, Rule 15(c) "does not specifically address relation back of amendments that propose to add or substitute plaintiffs." *Efthemes v. Amguard Ins. Co.*, No. 2:19-cv-01409, 2020 WL 4043227, at *2 (W.D. La. July 17, 2020).

## III.   ANALYSIS

Overall, the Court makes the following findings: Under Texas law, the statute of limitations for loss of household services is two years. In normal circumstances, Mr. Allen's claim would be time-barred. However, pursuant to the cannon of *in pari materia*, the Court finds the Emergency Orders equitably toll Mr. Allen's statute of limitations and apply in federal court. Pursuant to the Emergency Orders, Mr. Allen timely asserted his claim.

Even though the Court's interpretation of the Emergency Orders finds they are substantive, the Court examines the *Erie* "touchstones" for the sake of thoroughness. The Court's *Erie* analysis confirms the Emergency Orders are substantive.

Lastly, the Court finds Rule 15(a)'s five-factor test weighs in favor of granting the Allens leave to amend their Original Complaint. Because the Emergency Orders and Rule 15(a) allows the Court to hear Mr. Allen's claim, the Court does not reach Rule 15(c)'s relating back doctrine.

### A.  LOSS OF HOUSEHOLD SERVICES

Under Texas law, the spouse of a tortiously injured plaintiff can sue not only for loss of consortium, but also for loss of household services. *See City of Denton v. Page*, 683 S.W.2d 180, 206 (Tex. App.—Fort Worth 1985), *reversed in part on other grounds*, 701 S.W.2d 831 (Tex.

6

1986). Like loss of consortium, loss of household services is a derivative tort claim, in that a spouse may only recover if the alleged tortfeasor is actually liable for the plaintiff's underlying claim.[1] *See id.*; *Browning-Ferris Indus., Inc. v. Lieck*, 845 S.W.2d 926, 949 n.9 (Tex. App.—Corpus Christi-Edinburg 1992) ("[A] plaintiff in a loss of consortium action cannot sue unless the underlying tort is proven."), *reversed on other grounds*, 881 S.W.2d 288 (Tex. 1994). Loss of household services is premised on the theory that a spouse should recover for "household and domestic" tasks the injured can no longer perform. *See* 7B Tex. Jur. Pleading & Prac. Forms § 137:20 (2d ed.); *Dougherty v. Gifford*, 826 S.W.2d 668, 681 (Tex. App.—Texarkana 1992, no writ); *see also Whittlesey v. Miller*, 572 S.W.2d 665, 666–67 (Tex. 1978) (distinguishing between consortium—"the emotional or intangible elements of the marital relationship"—and "services" rendered by a spouse to the marriage); 44 Tex. Prac., Med. Malpractice § 8:21 (4th ed.) (noting cost of domestic help is admissible for this issue).

### 1. Applicable Statute of Limitations

To the Court's best knowledge, no Texas state court or federal district court has explicitly determined the statute of limitations for loss of household services, or at what point the period of limitations begins to run. For the reasons below, the Court finds the statute of limitations for loss of household services is two years, and it began to run on the date on which Mr. Allen first realized

---

[1] The Court notes the "loss of household services" claim originates from historical roots that are, at best, profoundly outdated. Previously, at common law, only a husband could assert a claim for loss of household services. *See* Martha Chamallas, *The Architecture of Bias: Deep Structures in Tort Law*, 146 U. Pa. L. Rev. 463, 501 (1998). Loss of consortium and loss of household services were "likened to a master's claim for deprivation of his servant's services and characterized as a material loss to the 'owner,'" and a wife "suffered no legally cognizable relational injury." *Id.* Though spouses of any gender can now assert loss of household services, to the Court's best knowledge, it appears Texas law is in the minority of states that restrict this claim to the spouse of a tort victim, rather than permitting the tort victim herself to assert it. *See id.* at 502. ("In its updated form, the loss-of-spousal consortium claim has lost its property-like character, especially because most states now hold that the primary accident victim, rather than the consortium claimant, has the right to recover for loss of household services."); *see also* Dan B. Dobbs, Law of Remedies § 8.1(5), at 660 (2d ed. 1993) (stating that only the injured spouse should recover for loss of services, as each spouse has the right to his or her own efforts and the products of those efforts).

Mrs. Allen's alleged injuries materially interfered with her ability to carry out "household and domestic tasks."

In *Trapnell v. Sysco Food Services, Inc.*, the Texas Court of Appeals held the statute of limitations for loss of consortium was two years. 850 S.W.2d 529, 551 (Tex. App.—Corpus Christi-Edinburg 1992), *aff'd*, 890 S.W.2d 796 (Tex. 1994). The court reasoned "a tort not expressly covered by a limitation provision would presumptively be a 'trespass' for limitations purposes." *Id.* (quoting *Williams v. Khalaf*, 802 S.W.2d 651, 654 (Tex. 1990)). Under Texas law, trespass carries a two-year statute of limitations. *Id.*; TEX. CIV. PRAC. & REM. § 16.003. *Trapnell's* reasoning has been applied to other torts lacking a specified period of limitations. *See, e.g.*, *Nguyen v. Watts*, 605 S.W.3d 761, 781 (Tex. App.—Houston [1st Dist.] 2020, no pet.) (holding civil barratry carries a two-year statute of limitations, as it is a tort ungoverned by any limitation provision); *Askanase v. Fatjo*, 130 F.3d 657, 665–66 (5th Cir. 1997) (holding same, but breach of fiduciary duty); *Castillo v. First City Bancorporation of Tex., Inc.*, 43 F.3d 953, 963 (5th Cir. 1994) (holding same, but duress); *Almazan v. United Servs. Auto Ass'n, Inc.*, 840 S.W.2d 776, 780 (Tex. App.—San Antonio 1992, writ denied) (holding same, but wrongful discharge); *Willis v. Maverick*, 760 S.W.2d 642, 644 (Tex. 1988) (holding same, but medical malpractice).

Here, loss of consortium is a claim sounding in tort and is not governed by any express limitation provision. Under Texas law, the applicable statute of limitations is two years. *See Trapnell*, 850 S.W.2d at 551.

## 2.   When the Statute of Limitations Runs

"A cause of action under the legal injury rule accrues at the first point from which a party may seek a judicial remedy." *Id.* (citing *Houston Water Works v. Kennedy*, 8 S.W. 36 (Tex. 1886)). "This is the point at which the tort complained of is completed; [that is,] when facts supporting

each element of the cause of action come into existence." *Id.* (citing *Atkins v. Crosland*, 417 S.W.2d 150, 153 (Tex. 1967)).

For loss of consortium, the statute of limitations begins running at the time of the first wrongful interference with the interests protected by the tort: "the emotional or intangible elements of the marital relationship." *Id.*; *Whittlesey*, 572 S.W.2d at 666; *see also Regent Care Ctr. of San Antonio, LP v. Detrick*, 567 S.W.3d 752, 766 (Tex. App.—San Antonio 2018, pet. granted) (defining consortium as "the mutual right" of spouses "to that affection, solace, comfort, companionship, society, assistance, sexual relations, emotional support, love, and felicity necessary to a successful marriage."). In *Turner v. PV International Corporation*, the Texas Court of Appeals clarified the period of limitations begins running when there is a *material* loss of consortium, not simply when a party feels an initial "lessening of his affection." 765 S.W.2d 455, 468 (Tex. App.—Dallas 1988), *writ denied per curiam*, 778 S.W.2d 865 (Tex. 1989).

By analogy, the Court finds the period of limitations for Mr. Allen's claim began when he first realized Mrs. Allen "materially" lost her ability to perform "household and domestic tasks." *Turner*, 765 S.W.2d at 468. That is, the period of limitations began running when Mr. Allen first realized his spouse had substantial, potentially permanent, difficulties with carrying out "household and domestic tasks," not simply because her injuries initially imposed difficulties. *See id.* According to the transcript of Mrs. Allen's deposition, taken on August 20, 2020, Mrs. Allen testified to the following:

Q. Okay. Did anything worsen in the days after the fall?

A. Definitely. Yes.

Q. Why don't you please tell me about that?

A. My ears started ringing. Both of them. I didn't know for sure whether it was my

head or my ears at first, but it turned out to be my ears. I had a tingling on the left side of my neck, the back of my neck. When I lifted my arms, they hurt. **I started noticing that I couldn't smell or taste.**

Q. When did that happen?

A. That was about—when I noticed it was **about two weeks later**, when I burnt some rolls and I didn't smell them.

Q. Do you still—have you regained your sense of smell and taste?

A. No, I have not.

Dkt. 18-2 at 2–3 (emphasis added).

The parties do not dispute Mrs. Allen fell on July 13, 2018. *See* Dkt. 1 at 2 (Original Complaint); Dkt. 3 at 2 (Original Answer). Adding fourteen days to July 13, 2018, means Mrs. Allen would have burned her rolls on July 27, 2018. Under a two-year statute of limitations, Mr. Allen needed to assert his loss of household services claim by July 26, 2020. Because July 26, 2020, is a Sunday, his deadline to file his claim fell on the next day: Monday, July 27, 2020. *See* Fed. R. Civ. P. 6(a)(1). Here, the Motion, requesting leave to amend, was filed on August 27, 2020, approximately one month after the statute of limitations had run. *See* Dkt. 16. Thus, it appears that Mr. Allen untimely asserted his claim for loss of household services.

Though it appears Mr. Allen's period of limitations began running on July 26, 2020, Sherman Operating notes the latest it could have begun running was one month after Mrs. Allen's fall. Dkt. 18 at 5. If the period of limitations began running on August 13, 2018—instead of July 27, 2020—Mr. Allen needed to file his claim by August 12, 2020. In this scenario, Mr. Allen's filing would still be untimely.

Thus, Mr. Allen's ability to join this lawsuit rises and falls on the *Erie* question at hand: whether the Texas Supreme Court's Emergency Orders Regarding the COVID-19 State of Disaster applies in federal courts.

### B.  THE TEXAS SUPREME COURT EMERGENCY ORDERS

On March 13, 2020, the Texas Supreme Court issued its first Emergency Order Regarding the COVID-19 State of Disaster ("Emergency Order 1"). *See* 596 S.W.3d 265 (Tex. 2020). Emergency Order 1 provides:

> 1. Governor Abbot has declared a state of disaster in all 254 counties in the State of Texas in response to the imminent threat of the COVID-19 pandemic. This order is issued pursuant to Section 22.0035(b) of the Texas Government Code.
>
> . . .
>
> 3. All courts in Texas **may extend the statute of limitations** in any civil case for a stated period ending no later than 30 days after the Governor's state of disaster has been lifted.

*Id.* (emphasis added).

The Texas Supreme Court has since issued numerous Emergency Orders, with the latest being Emergency Order 35, issued on February 11, 2021. *See* No. 21-9151, — S.W.3d — (Tex. 2021). Below, the Court discusses five Emergency Orders most relevant to the present Motion— Emergency Orders 8, 12, 17, 18, and 21. *See* 597 S.W.3d 844 (Tex. 2020); No. 20-9059, 2020 WL 6390519, — S.W.3d — (Tex. Apr. 27, 2020); 609 S.W.3d 119 (Tex. 2020); 609 S.W.3d 122 (Tex. 2020); 609 S.W.3d 128 (Tex. 2020).

### 1.  Emergency Order 8

As stated above, Paragraph 3 of Emergency Order 1 authorized Texas state courts to "extend the statute of limitations" in any civil case for a stated period no later than thirty (30) days after the Governor's State of Disaster has been lifted. 596 S.W.3d at 265. Because Emergency Order 1 lengthens a statute of limitations, it is clearly substantive under the *Erie* doctrine. *Guaranty Trust*, 326 U.S. at 110 ("The fact that under [state law] a statute of limitations might be lengthened

or shortened . . . are all matters of local law properly to be respected by federal courts. . . ."); *see Hensgens*, 869 F.2d at 880 & n.3.

Emergency Order 8 "amends" Paragraph 3 of Emergency Order 1, instructing "[a]ny deadline for the filing of any civil case *is tolled* from March 13, 2020 until June 1, 2020, *unless extended* by the Chief Justice of the Supreme Court [of Texas]." 597 S.W. 3d at 844. Because Emergency Order explicitly uses the words "tolled" and "extended," Emergency Order 8 is also substantive under the *Erie* doctrine. *See Guaranty Trust*, 326 U.S. at 110; *Hensgens*, 869 F.2d at 880 & n.3.

### 2. Emergency Order 12

Beginning with Emergency Order 12, it is less clear whether the Emergency Orders are substantive. By its terms, Emergency Order 12 "clarified and amended" Emergency Orders 1 and 8, providing: "Any deadline for the filing or service of any civil case that falls on a day between March 13, 2020, and June 1, 2020, is extended until July 15, 2020." *See* 2020 WL 6390519, at *1. Nowhere does Emergency Order 12's text use the words "statute of limitations" or "toll."

However, Emergency Order 12 uses the word "extended," which is found in both Emergency Orders 1 and 8. *See* 596 S.W.3d at 265 (Emergency Order 1, using "extend" in the context of a statute of limitations); 597 S.W. 3d at 844 (Emergency Order 8, using "extended" in the context of a statute of limitations).

Emergency Order 12 also uses the phrase "filing . . . of any civil case," which is found in Emergency Order 8. *See* 597 S.W. 3d at 844 (Emergency Order 8, which refers to the "deadline for the filing" of "any civil case"); 2020 WL 6390519, at *1 (Emergency Order 12, stating the same). *But see* 596 S.W.3d at 265 (Emergency Order 1, using "in any civil case" but not "filing"). As a matter of statutory construction, there appears to be two possible, competing interpretations.

On one hand, one could argue Emergency Order 12's omission of "statute of limitations" and "tolling" evinces the Texas Supreme Court's desire not to lengthen the statute of limitations for civil actions: "Hornbook canons of statutory construction require that every word in a statute be interpreted to have meaning, and Congress's use and withholding of terms within a statute is taken to be intentional." *U.S. Chamber of Commerce. v. U.S. Dep't of Labor*, 885 F.3d 360, 381 (5th Cir. 2018).

On the other hand, there is also the "established rule" of *in pari materia*, meaning "[o]n the same subject; relating to the same matter." *Cannon's Adm'r v. Vaughan*, 12 Tex. 399, 402 (1854); *In pari materia*, BLACK'S LAW DICTIONARY (11th ed. 2019). Under this cannon of construction, "[A]ll acts *in pari materia* are to be taken together, as if they were one law, and that if it can be gathered from a subsequent statute, *in pari materia*, what meaning the Legislature attached to the words of the former statute, this will amount to a legislative declaration of its meaning." *Vaughan*, 12 Tex. at 402 (italics added). As the United States Supreme Court has stated, "The correct rule of interpretation is, that if divers[e] statutes relate to the same thing, they ought all to be taken into consideration in construing any one of them. . . . [I]f it can be gathered from a subsequent statute *in pari materia*, what meaning the legislature attached to the words of the former statute, they will amount to a legislative declaration of its meaning. . . ." *United States v. Freeman*, 44 U.S. 556, 564–65 (1845).

Because Emergency Order 12 "clarified" and "amended" Emergency Orders 1 and 8's provisions on the "filing" of "any civil action," the Court finds the *in pari materia* approach more persuasive. 2020 WL 6390519, at *1. By clarifying and amending Emergency Orders 1 and 8, Emergency Order 12 is "[o]n the same subject," and "relat[es] to the same subject matter" of these previous Emergency Orders: the tolling and extension of statutes of limitations for civil actions.

*In pari materia*, BLACK'S LAW DICTIONARY (11th ed. 2019). Because Emergency Order 12 pertains to the tolling and lengthening of statute of limitations, it is substantive under the *Erie* doctrine. *See Guaranty Trust*, 326 U.S. at 110; *Hensgens*, 869 F.2d at 880 & n.3.

**3. Emergency Orders 17, 18, and 21**

Under the canon of *in pari materia*, Emergency Orders 17, 18, and 22 are also substantive. Emergency Order 17 "renewed and amended" Emergency Order 12, providing, "Any deadline for the filing or service of any civil case that falls on a day between March 13, 2020, and July 1, 2020, *is extended* until August 15, 2020." 609 S.W.3d at 119 (emphasis added).

Emergency Order 18 "renewed" and "amended" Emergency Order 17, providing, "Any deadline for the filing or service of any civil case that falls on a day between March 13, 2020 and August 1, 2020, *is extended* until September 15, 2020." 609 S.W.3d at 122 (emphasis added).

So, too, with Emergency Order 21. Emergency Order 21 "renewed" and "amended" Emergency Order 18, providing, "Any deadline for the filing or service of any civil case that falls on a day between March 13, 2020, and September 1, 2020, *is extended* until September 15, 2020." 609 S.W.3d at 128 (emphasis added).

Thus, under the Emergency Orders, Mr. Allen's loss of household services claim is timely. If the period of limitations began running on the day Mrs. Allen burned her rolls—July 27, 2018— Emergency Order 18 allows Mr. Allen to assert his claim, so long as he filed by September 15, 2020. *See* 609 S.W.3d at 122.; Dkt. 1 at 2; Dkt. 18-2 at 3. Here, Mr. Allen attempted to assert his claim in federal court on August 27, 2020, before Emergency Order 18's deadline. Dkt. 16; Dkt. 18-2 at 3.

If Mr. Allen's period of limitations began running on August 13, 2018, Emergency Order 21 would compel the same result. *See* 609 S.W.3d at 128.

14

## C. *ERIE* ANALYSIS

Even though the Court has determined the Emergency Orders 12, 17, 18, and 21 (the "Ambiguous Emergency Orders") are substantive under the *Erie* doctrine, out of an abundance of caution, the Court conducts an *Erie* analysis.

Sherman Operating contends the Ambiguous Emergency Orders are "a purely procedural mechanism" that should not have an "impact or authority beyond the state courts of Texas." Dkt. 18 at 6. "As such, the substantive law as to Mr. Allen's statute of limitations remains the same [two years], thereby making Mr. Allen's claim time-barred." *Id.* at 7. In its supplemental brief, Sherman Operating cites *In re Herman*, No. 8:20-cv-00866-VAP, 2020 WL 5351944, at *1 (C.D. Cal. Aug. 17, 2020) and *Lewis v. City of Edmond*, No. CIV-19-489-R, 2020 WL 6275174 (W.D. Okla. Oct. 26, 2020), to support its position. *See* Dkt. 34.

The Allens argue *Erie's* outcome-determinative test would categorize the Ambiguous Emergency Orders as substantive. Dkt. 21 at 2. The Allens contend, "There is no reason to have one limitations period in federal court and a completely different period in state court. That would surprisingly create different outcome[s] for all diversity cases filed in federal court versus state courts. . . ." *Id.*[2]

---

[2] In their supplemental briefing, the Allens cite *Cole v. Chevron USA, Inc.*, 554 F. Supp. 2d 655 (S.D. Miss. 2007). In *Cole*, a case preceding the global COVID-19 pandemic, thirty-nine consumers attempted to bring a class action suit against Chevron under the Mississippi Consumer Protection Act ("CPA"). *See* 554 F. Supp. 2d at 658; MISS. CODE ANN. § 75-24, *et seq.* The thirty-nine consumers alleged Chevron committed price gouging during the state-of-emergency declared as a result of Hurricane Katrina. *See id.* at 658. Because the CPA prohibited profiteering on sales of goods and services within an "emergency impact area" and not during a "state of emergency," the court found, under Mississippi law, plaintiffs failed to state a claim under the statute. *See id.* at 661–62, 665–66. The court found class action suits are a substantive area of law, and as such, the court was bound to apply Mississippi law to bar the plaintiffs' suit. *See id.* at 666. While *Cole* certainly involves a disaster, it does not address how the state of emergency declaration affect statute of limitations or other extensions of deadlines and filing periods.

The Allens also cite *Tradewinds Environment Restoration, Inc. v. St. Tammany Park, LLC*, 578 F.3d 255 (5th Cir. 2009). In *Tradewinds*, a state agency suspended licensing requirements in the aftermath of Hurricanes Katrina and Rita, despite no executive order authorizing the suspension. *Id.* at 260–61. The Fifth Circuit held a Louisiana state agency acted beyond its authority during a disaster and invalidated the state agency's suspension. *Id.* at 260–61. Here,

The Allens represent that, due to this dispute over the Ambiguous Emergency Orders and the *Erie* doctrine, Mr. Allen has filed his loss of household services action in state court to preserve his claim. *Id.* at 2–3. To date, the state court docket reflects Mr. Allen has filed an original petition, and Sherman Operating has filed an answer. *See Allen v. Sherman Operating Co.*, No. CV-20-1280 (18th Dist. Ct., Grayson County, Sept. 10, 2020).

Overall, the Court's *Erie* analysis finds the Ambiguous Emergency Orders are substantive, at least to the extent they extend or toll a plaintiff's statute of limitations in a civil action. *Hensgens*, 869 F.2d at 880 & n.3.

### 1.  Relevant Case Law

Recently, the District Court for the Southern District of Texas found Emergency Orders 17 and 21 applied in federal courts. *See Argueta v. City of Galveston*, No. 3:20-cv-367, 2021 WL 137664, at *2 (S.D. Tex. Jan. 14, 2021). In *Argueta*, multiple civil rights plaintiffs filed their Section 1983 suit one day after the statute of limitations had lapsed. *Id.* at *1. The court noted that, in Section 1983 cases, federal courts not only borrow from state law to determine the statute of limitations, but they also "give effect to the state's tolling provisions as well." *Id.* (quoting *Jackson v. Johnson*, 950 F.2d 263, 265 (5th Cir. 1992)). The court observed the defendants did not adequately address the tolling effect of Emergency Orders 17 and 21, as they simply invoked the *Erie* "buzzwords" of "federal policy goals of uniformity and federalism." *Id.* at *2. Without explicitly finding Emergency Orders 17 and 21 equitably tolled the statutes of limitations, the court

---

all actions appear legally sound. Governor Abbott declared a State of Disaster through a Proclamation, and a Texas statute authorized the Texas Supreme Court to act in this instance. *See* Tex. Gov't. Code § 418.014 (authorizing Governor to declare a State of Disaster); The Governor of the State of Tex., Proclamation No. 41-3720, 45 Tex. Reg. 2087, 2094 (2020) (declaring State of Disaster); Tex. Gov't. Code § 22.0035(b) (authorizing Texas Supreme Court authority to issue the Emergency Orders during States of Disaster). As such, the Emergency Orders were properly issued. The Court finds *Tradewinds* is not responsive to the issues raised in the Motion.

found the Emergency Orders applied in federal court because "[u]nder Texas law, the plaintiffs' suit [was] timely," and as such, the plaintiffs' suit must also be timely in federal court. *Id.*

Similarly, the District Court for the Western District of Oklahoma recently found the Oklahoma Supreme Court's Third Emergency Joint Order Regarding the COVID-19 State of Disaster, 462 P.3d 703 (Okla. 2020), applied in federal courts. *See Lewis*, 2020 WL 6275174, at *3. Because Oklahoma's Emergency Orders stated "all rules and procedures, and deadlines . . . will be treated *as a tolling period*," the Western District of Oklahoma found the state's highest court "intended to toll" a statute's period of limitations for filing suit. 462 P.3d at 703; 2020 WL 6275174, at *3.

Thus, *Argueta* and *Lewis* suggest the Ambiguous Emergency Orders are substantive, and hence, apply in federal court.

However, in *In re Herman*, the District Court for the Central District of California found a COVID-19 emergency order from Orange County did not apply in federal court. 2020 WL 5351944, at *1. There, an individual appealed an unfavorable decision from the Bankruptcy Court for the Central District of California. *See id.* Under Federal Rule of Bankruptcy Procedure 8002, the individual needed to file her appeal no later than fourteen days after the Bankruptcy's Court appealable decision. *Id.* Instead, she filed her notice of appeal twenty-five days after the unfavorable decision, citing an emergency order from Orange County declaring "all dates from April 27 to May 22 are holidays for the purposes of computing time for filing papers." *Id.* The District Court for the Central District of California found the emergency order does not apply in federal court, reasoning "a rule dictating the deadline for filing a notice of appeal is clearly procedural, and the federal, not state, rule applies." *Id.*

The Court finds *In re Herman* is distinguishable. That case involved a notice of appeal, not a statute of limitations. The law is clear that statutes of limitations, their extension, limitation, and tolling are substantive under the *Erie* doctrine. *See Guaranty Trust*, 326 U.S. at 110; *Hensgens*, 869 F.2d at 880 & n.3.

### 2. *Erie* Analysis

Overall, under an *Erie* analysis, the Court finds the Ambiguous Emergency Orders are substantive, not procedural.

Because the Federal Rules do not prescribe statutes of limitations, there is no Federal Rule in direct conflict with the Ambiguous Emergency Orders. *See All Plaintiffs*, 645 F.3d at 333 ("The initial step is to determine whether, when fairly construed, the scope of [the Rule] is 'sufficiently broad' to cause a 'direct collision' with the state law or, implicitly, to 'control the issue' before the court, thereby leaving no room for the operation of that law.") (quoting *Burlington N. R.R. Co. v. Woods*, 480 U.S. 1, 4–5 (1987)).

Additionally, because the Texas Supreme Court has not explicitly stated the Ambiguous Emergency Orders toll a statute of limitations, the Court must "wade into the 'murky' waters of *Erie* itself." *All Plaintiffs*, 645 F.3d at 333. In such murky waters, the Court must determine: (1) whether categorizing the Ambiguous Emergency Orders as procedural is outcome-determinative; and (2) whether the Ambiguous Emergency Orders are "bound up" in a party's rights and obligations. *Gasperini*, 518 U.S. at 427–28; *see Hanna*, 380 U.S. at 468; *Byrd*, 356 U.S. at 538–39; *Guaranty Trust*, 326 U.S. at 109.

### a. The Outcome-Determinative Test

The "essence" of *Erie* is to ensure a litigation's outcome in federal court is substantially similar if it were tried in state court. *See Guaranty Trust*, 326 U.S. at 109. Accordingly, a federal

court must ask itself "whether application of the rule would make so important a difference to the character or result of the litigation that failure to enforce it would unfairly discriminate against citizens of the forum State." *Hanna*, 380 U.S. at 468 n.9. Put another way, the *Erie* doctrine exists to afford the parties equal protection, thereby requiring federal courts to consider how their decision will influence forum shopping and the equitable administration of the laws. *See id.* at 467–68.

Here, the Ambiguous Emergency Orders are outcome-determinative. Under the forum shopping consideration, the Court must examine the differences between the state and federal rule, ascertaining whether such differences are "scant," or have any relevance to the choice of forum. *Id.* at 469. Upon review of the Ambiguous Emergency Orders, particularly Emergency Order 21, the Court finds its effect on a plaintiff's ability to bring suit is more than "scant." Under Emergency Order 21, a plaintiff whose claim was barred on March 14, 2020, can now assert a claim as late as September 15, 2020—an extension of nearly half a year. *See* 609 S.W.3d at 128. This extension cannot fairly be characterized as "scant" or inconsequential. Because Emergency Order 21 and its brethren allows certain parties to initiate their suits much later than they otherwise would be allowed, the Ambiguous Emergency Orders are highly relevant to the parties' choice of forum. *See Hanna*, 380 U.S. at 469. Hence, the forum shopping factor weighs in favor of classifying the Ambiguous Emergency Orders as substantive. *See id.*

Under the "inequitable administration of the laws" factor, the Court also finds the Emergency Orders are substantive. "[S]ince a federal court adjudicating a state-created right solely because of the diversity of citizenship of the parties is for that purpose, in effect, only another court of the State, . . . [it cannot] substantially affect the enforcement of that right as given by the State." *Guaranty Trust*, 326 U.S. at 108–19.

Here, the Court finds *Argueta* instructive. In *Argueta*, the court found that because the plaintiffs' suit was timely filed under Texas law, it must also be considered timely in federal court. *See* 2021 WL 137664, at *2. To afford Mr. Allen equal protection in both state and federal courts, the "inequitable administration of the laws" factor supports finding the Ambiguous Emergency Orders as substantive. Therefore, the outcome-determinative test, overall, weighs in favor of finding the Ambiguous Emergency Orders tolled Mr. Allen's statute of limitations.

     b.  <u>"Bound Up" with State Substantive Rights</u>

The Court finds the Ambiguous Emergency Orders are "bound up" with the Allens' substantive state rights. In *Guaranty Trust*, the United States Supreme Court stated:

> Plainly enough, a statute that would completely bar recovery in a suit if brought in a State court bears on a [state-created] right vitally and not merely formally or negligibly. As to consequences that so intimately affect recovery or non-recovery a federal court in a diversity case should follow State law. The fact that under New York law a statute of limitations might be lengthened or shortened . . . are all matters of local law properly to be respected by federal courts sitting in New York when their incidence comes into play there. . . . Judge Augustus N. Hand thus summarized below the fatal objection to such inroad upon *Erie R. Co. v. Tompkins*: 'In my opinion it would be a mischievous practice to disregard state statutes of limitations whenever federal courts think that the result of adopting them may be inequitable. Such procedure would promote the choice of United States rather than of state courts in order to gain the advantage of different laws. . . .'

326 U.S. at 110–11 (internal quotations and citations omitted) (italics added).

*Guaranty Trust's* reasoning counsels the Court to find the Ambiguous Emergency Orders are "bound up" in the Allens' substantive rights for the following two reasons.

First, the Texas Supreme Court did not issue the Ambiguous Emergency Orders "merely formally or negligibly." *Id.* at 110. The Ambiguous Emergency Orders were issued during a State of Disaster caused by the novel coronavirus, which has threatened to completely shut down the legal system. *See* Jay M. Zitter, *COVID-19 Related Litigation: Effect of Pandemic on Deadlines for State Court Filings and Hearings*, 55 A.L.R. 7th Art. 3 (2020).

Justice Kavanaugh recently described the COVID-19 pandemic as "devastating" and "extraordinarily serious and deadly." *Roman Catholic Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63, 73–74 (2020) (Kavanaugh, J., concurring). On January 30, 2020, the Worth Health Organization declared the COVID-19 outbreak a public health emergency of international concern. *See Valentine v. Collier*, No. 4:20-cv-1115, 2020 WL 5797881, at *3 (S.D. Tex. Sept. 29, 2020); *see also Fabian v. State*, No. 03-19-00486-CR, 2020 WL 3118697, at *1 (Tex. App.—Austin June 5, 2020, no pet.) (granting extension due to "extraordinary circumstances" imposed by the COVID-19 pandemic). Thus far, the pandemic has killed hundreds of thousands of Americans, with a total death count of half a million predicted for April 2021. *See Agudath Israel of Am. v. Cuomo*, 979 F.3d 177, 181 (2d Cir. 2020); Jeff Thaler, *The Next Surges Are Here: What Can American Governments Lawfully Do in Response to the Ongoing COVID-19 Pandemic?*, 42 MITCHELL HAMLINE L.J. PUB. POL'Y & PRAC. 165, 165–66 (2020).

As the American Law Report notes, "[I]n response to proclamations of states of emergency and lockdowns by governors as the pandemic increased in intensity, . . . many or all deadlines and procedures were suspended, whether by statute, rule, or order, for a period of time connected to the ending of the governor's state of disaster, and *statutes of limitations also were tolled*." Zitter, *supra*, at Art. 3 (emphasis added). In light of the devastating impact from the ongoing pandemic, it cannot fairly be found that the Texas Supreme Court issued the Emergency Orders "merely formally or negligibly." *Guaranty Trust*, 326 U.S. at 110; *see also El Paso County.*, 2020 WL 6737510, at *1 (explaining, at one point, El Paso County's intensive care units exceeded capacity, with some hospitals forced to airlift patients to other locations).

Second, the Ambiguous Emergency Orders "intimately" affect a plaintiff's ability to bring suit. *Guaranty Trust*, 326 U.S. at 110. Prior to the Ambiguous Emergency Orders, plaintiffs whose

statute of limitations lapsed between March 13, 2020, and September 1, 2020, and could access courthouses faced the following two scenarios: (1) either file suit in-person at a courthouse, thereby risking their health and life, but proceed with vindicating their rights, or (2) forego their lawsuit altogether, but preserve their well-being. For other plaintiffs, unilateral government action may have forced them to give up their lawsuit entirely, as courthouses may have closed or a county may have issued a stay-at-home order at precisely the time the plaintiffs' statute of limitations had run. *See, e.g.*, *Fagin v. Hughs*, 473 F. Supp. 3d 711, 715 (S.D. Tex. 2020) (Bexar County's stay-at-home order); *Russell v. Harris Cnty., Tex.*, 454 F. Supp. 3d 624, 627 (S.D. Tex. 2020) (Harris County); *Hajer v. Ohio Sec. Ins. Co.*, No. 6:20-cv-283, 2020 WL 7211636, *1, — F. Supp. 3d — (E.D. Tex. 2020) (Smith County).

With the issuance of the Ambiguous Emergency Orders, plaintiffs who could access the courts were relieved from having to make a Hobson's choice between their health and pursuing their rights afforded by law. For plaintiffs who were denied access to the judiciary due to closed courthouses or stay-at-home orders, the Ambiguous Emergency Orders restored their access to justice. Clearly, the Ambiguous Emergency Orders "intimately" affect the statute of limitations and toll them. *Guaranty Trust*, 326 U.S. at 110; *see also Walker*, 446 U.S. at 750–51 (holding tolling provisions are "an integral part" of the statute of limitations).

Accordingly, to the extent the Ambiguous Emergency Orders toll a civil litigant's statute of limitations arising under Texas law, these Ambiguous Emergency Orders are a "matter[] of local law" "to be respected" by federal courts. *Guaranty Trust*, 326 U.S. at 110. It would be "a mischievous state practice" to disregard the Ambiguous Emergency Orders in this context, as doing such would encourage diverse defendants to "promote the choice of the United States rather than of state courts in order to gain the advantage of different laws" during times of crisis and

States of Disaster. *Id.* at 111. The Court finds the Ambiguous Emergency Orders are "bound up" in the Allens' substantive state rights afforded by Texas law.

Because the outcome-determinative test and "bound up" consideration support finding the Ambiguous Emergency Orders are substantive, the Ambiguous Emergency Orders apply in federal courts to the extent they affect statutes of limitations.

### D.  RULE 15(a)

As stated by the Fifth Circuit, the "discretion" to grant leave to amend a complaint "may be a misleading term." *See Dussouy*, 660 F.2d at 597. In practice, Rule 15(a) "severely restricts the judge's freedom," for "unless there is a substantial reason to deny leave to amend, the discretion of the district court is not broad enough to permit denial." *Id.* at 597–98 (citations omitted). As outlined by the United States Supreme Court, courts evaluate five considerations to determine whether to grant a party leave to amend a complaint: (1) undue delay, (2) bad faith or dilatory motive, (3) repeated failure to cure deficiencies by previous amendments, (4) undue prejudice to the opposing party, and (5) futility of the amendment." *Smith v. EMC Corp.*, 393 F.3d 590, 595 (5th Cir. 2004) (citing *Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 864 (5th Cir. 2003); *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

The Court finds the first factor—undue delay—weighs neutrally. Although "'it is generally true that leave to file amendments should freely be given, amendments should be tendered no later than at the time of pretrial, unless compelling reasons why this could not have been done are presented.'" *Glass v. Petro-Tex Chem. Corp.*, 757 F.2d 1554, 1562 (5th Cir. 1985) (quoting *Nevels v. Ford Motor Co.*, 439 F.2d 251, 257 (5th Cir. 1971)). "At some point, time delay on the part of the plaintiff can be procedurally fatal." *Gregory v. Mitchell*, 634 F.2d 199, 203 (5th Cir. 1981).

Here, the Allens filed the Motion on August 27, 2020—approximately four and a half months after the Original Complaint was filed on April 8, 2020. *See* Dkts. 1, 16, 18-2. Thus, the Allens requested leave to amend one week after Mrs. Allen's revelatory deposition testimony. *See id.* Moreover, the Motion was filed well before the Scheduling Order's deadline of October 6, 2020, for amended pleadings. *See* Dkt. 10. These facts suggests no undue delay.

However, theoretically, Mr. Allen should have known of his loss of household services claim as far back as July 2018, when Mrs. Allen first burned her rolls. *See* Dkt. 18-2 at 3; *Matter of Southmark Corp.*, 88 F. 3d 311, 315–16 (5th Cir. 1996) (undue delay where facts needed to effectuate amendment were known when the original complaint was filed); *KaZee, Inc. v. Raimer*, No. 4:19-cv-31-KPJ, 2020 WL 6382631, at *3 (E.D. Tex. Oct. 30, 2020) (finding undue delay where party had been aware of issues presented in motion for nearly one year). Because the Allens' Motion was timely in the context of this litigation, but was untimely because they knew of the claim for at least two years, the Court finds the undue delay factor weighs neutrally.

Second, because the briefs do not address the matter of bad faith or dilatory motive, the Court finds this factor weighs in favor of granting the Allens leave to amend their complaint. *See Williams*, 2020 WL 1158610, at *4 (finding factor weighs in favor of amendment where no evidence of bad faith or dilatory motive existed in the record); *see also Nevels*, 439 F.2d at 257 (noting bad faith and dilatory motive can exist where the movant created a "last minute surprise" on an adversary, rendering the adversary unable "to meet the tendered issue").

Third, because this is Mrs. Allen's first request to amend, there is no repeated failure to cure a previous deficiency, leading this factor to weigh in favor of granting leave. *See Williams*, 2020 WL 1158610, at *4.

Fourth, because the Motion was filed in the early stages of litigation—before the deadline

for discovery and dispositive motion deadlines had passed—the Court does not find Defendants have experienced undue prejudice.

Fifth, granting leave to amend the complaint would not be futile. "Futility is determined under Rule 12(b)(6) standards, meaning an amendment is considered futile if it would fail to state a claim upon which relief could be granted." *Justice v. PSI-Intertek*, No. 3:20-cv-3172-S-BN, 2021 WL 39587, at *1 (N.D. Tex. Jan. 4, 2021). Here, the Allens represent the following: Mrs. Allen first realized she lost her sense of smell and taste in July 2018; the Allens were married at that time; and, as of August 20, 2018, Mrs. Allen had not regained these senses. *See* Dkt. 18-2 at 3. Further, Mrs. Allen's deposition testimony reveals an incident in which she inadvertently burned food because of her anosmia. *See* Dkt. 18-2 at 3. Under Rule 12(b)(6), the Allens have plausibly stated a claim for household services. Amendment would not be futile.

Thus, four of the five factors weigh in favor of granting the Allens leave to amend their complaint. As to the remaining factor—undue delay—the Court finds it weighs neutrally. Balancing all five factors supports granting the Allens leave to amend their complaint.

### E.  RULE 15(c)

The Court has already found the Ambiguous Emergency Orders apply in federal court, and under this finding, the Allens timely filed their Motion. Accordingly, the Court need not reach the applicability of the relating back doctrine. Although, the law seems to suggest the Allens cannot benefit from the relating back doctrine. *See Newell v. Harrison*, 779 F. Supp. 388, 388, 392 (E.D. La. 1991) (holding doctrine did not apply where a husband was injured in a motorcycle accident and his wife attempted to assert a claim for loss of consortium).

## IV.   CONCLUSION

For the foregoing reasons, the Court finds Plaintiff's Motion (Dkt. 16) is hereby **GRANTED**.

**IT IS ORDERED** that Plaintiff's First Amended Complaint (Dkt. 17) is deemed filed and is the live Complaint in this matter.

**IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment (Dkt. 23) is **DENIED AS MOOT**. The Court notes that this matter's Scheduling Order (Dkt. 10) sets the deadline for filing dispositive motions on January 22, 2021, which has since passed. Accordingly, **IT IS FURTHER ORDERED** that Defendants are granted leave to reurge their motion for summary judgment. **IT IS FURTHER ORDERED** that Defendants file a motion for summary judgment, if any, by **March 3, 2021**. To the extent the parties wish to engage in additional discovery or otherwise amend the Court's Scheduling Order (Dkt. 10), they are to file a joint proposed scheduling order no later than **February 24, 2021**.

**So ORDERED and SIGNED this 18th day of February, 2021.**

_____
KIMBERLY C. PRIEST JOHNSON
UNITED STATES MAGISTRATE JUDGE